**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  09-61136-CIV-MORENO/SIMONTON**

**DONALD A. YARBROUGH,**

     **Plaintiff,**

**v.**

**CREDIT CONTROL SERVICES, INC.**
**and QUEST DIAGNOSTICS INC.,**

     **Defendants.**

_____/

**REPORT AND RECOMMENDATION**
**RE: DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES**

This matter arose upon the Motions for Attorneys' Fees filed by Defendant Quest Diagnostics Inc. ("Quest") (DE # 41) and by Defendant Credit Control Services, Inc. ("Credit Control") (DE # 42).  The Honorable Federico A. Moreno, Chief United States District Judge, has referred these motions to the undersigned United States Magistrate Judge (DE # 46, 50).[1]  Plaintiff has responded in opposition to both Motions (DE # 52, 53). Defendant Quest has filed a Reply in support of its Motion (DE # 54).  For the reasons stated below, the undersigned RECOMMENDS that each of the Motions be DENIED.

    I.    **BACKGROUND**

        A.    **The Complaint**

On July 27, 2009, Plaintiff Donald A. Yarbrough ("Yarbrough") filed a five-count Complaint against Quest and Credit Control seeking recovery based upon violations of the law concerning debt collection practices (DE # 1).  According to the Complaint, this

---

[1]  These motions initially were referred to another Magistrate Judge who entered an Order of recusal, which led to the reassignment of this matter to the undersigned Magistrate Judge (DE # 50).

lawsuit stems from the activities that occurred when Credit Control sought to collect from Yarbrough a debt he allegedly owed to Quest for medical laboratory testing (DE # 1 at ¶ 8).  Specifically, in Count I, Yarbrough alleged that Credit Control committed telephonic harassment and abuse, in violation of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d, "by leaving telephone messages for Plaintiff which required Plaintiff to access a website to stop the calls or otherwise communicate with Defendant" (DE # 1 at ¶ 24).  In Count II, Yarbrough alleged that Credit Control violated the FDCPA, in violation of 15 U.S.C. § 1692d, by "using an automatic telephone dialing system or pre-recorded or artificial voice in placing telephone calls to Plaintiff's cellular telephone to which Plaintiff had not consented" (DE # 1 at ¶ 26).  In Count III, Yarbrough alleged that Credit Control had committed harassment in violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72(7), by "using an automatic telephone dialing system or an artificial or pre-recorded voice to place calls to a cellular telephone service without prior express consent . . . the natural consequence of which is to harass" (DE # 1 at ¶ 28).  In Count 4, Yarbrough alleged that Credit Control violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), by placing telephone calls to Plaintiff's cellular telephone using an automated telephone dialing system or an artificial or pre-recorded voice without Plaintiff's prior express consent" (DE # 1 at ¶ 30).  Plaintiff Yarbrough also sought relief from Quest in Count IV, based upon his allegation that Quest was liable for Credit Control's violation of the TCPA since Credit Control placed the calls on behalf of Quest (DE # 1 at ¶ 21).  In Count V, Yarbrough sought declaratory and injunctive relief with regard to both Defendants; specifically, a declaration that Defendants' practices were in violation of the TCPA and the FCCPA; and, an injunction prohibiting Defendants from continuing their violation of

the TCPA and the FCCPA (DE # 1 at ¶¶ 32-35).

As to Defendant Credit Control, Yarbrough sought damages, attorney's fees, costs and other appropriate relief as to Counts I, II, and III; damages and other appropriate relief as to Count IV; and declaratory and injunctive relief as to Count V.

As to Defendant Quest, Yarbrough sought damages and other appropriate relief as to Count IV; and declaratory and injunctive relief as to Count V.

The Complaint specifically alleged the content of various messages that were left on Yarbrough's voice mail on his cellular telephone.  The first message, which was left on July 26, 2008, stated:

> Please be advised this is not a telemarketing call.  This is a personal business message for Donald Yarbrough.  If the intended party cannot be reached at this number, call [specified number] and we will cease further attempts to this number.  If you are not the intended party, please hang up at this time.  This message contains private information and should not be played in a manner where it can be heard by others.  This call is from CCS, Credit Collection Services.  This is an attempt to collect a debt and any information obtained will be used for the purpose.  For your privacy protection, visit our secure website at [specified website address] to access your personal account information.  Your file number is [specified file number].  Thank you.

The messages left on August 4, 2008; November 25, 2008; December 18, 2008; and January 13, 2009, were substantially the same.

The messages left in 2008 on August 19, 24, 30; September 6, 13, 21, 28; October 8, 18; and November 11, 2008, were slightly modified and included the following sentence at the end: "In the event you do not have internet access, please call 800-708-6019 and have your file number available."

B.   Disposition of the Complaint

On February 4, 2010, Credit Control filed a Motion for Judgment on the Pleadings

3

with respect to the Counts of the Complaint that alleged violations of the FDCPA and FCCPA (Counts I, II, III and V). Credit Control asserted that, as a matter of law, neither the number of calls placed – 18 – nor the language of the 15 recorded telephone messages, which formed the basis for these counts, violated either of those statutes.

Specifically, Credit Control asserted that the messages did not *require* Plaintiff to access a website to obtain information about the alleged debt since the messages also provided a telephone number, and thus Credit Control was entitled to judgment as to Count I (DE # 15 at 5). As to Counts II and III, Credit Control asserted that it was entitled to judgment since Counts II and III amounted to "per se" claims that a violation of the TCPA provisions (which preclude calls by automated dialing systems to cellular telephones without consent), was necessarily harassment prohibited by the FDCPA and FCCPA; and these claims are not sufficient since the same calls made to a landline telephone would not violate the FDCPA (DE # 15 at 6-8).

As to the claims for declaratory and injunctive relief in Count V, Credit Control asserted that this was not an independent cause of action, but only a remedy; and, therefore it was entitled to judgment on the pleadings as to this Count as well (DE # 15 at 8 - 9, incorrectly referencing non-existent Count VI rather than Count V).

Defendant Quest specifically adopted and joined in the arguments presented by Credit Control, specifically referencing Count V (DE # 16).

Plaintiff failed to respond in opposition to this Motion, despite requesting and receiving an extension of time to do so. Therefore, on March 15, 2010, the District Judge entered an Order that granted this Motion by default, and dismissed Counts I, II, III and V with prejudice (DE # 20).

Litigation continued with respect to Count IV, the only remaining count, which

alleged a violation of the TCPA.[2] On April 1, 2010, Defendants took the deposition of the

creditor, Broward Oncology Associates ("BOA"), which lasted 40 minutes (DE # 26).  On

April 2, 2010, both Defendants jointly filed a Motion for Summary Judgment as to Count

IV of the Complaint, asserting that the undisputed facts established that the calls made

to Yarbrough's cellular telephone were exempted from the provisions of the TCPA based

upon his "prior express consent."  To establish prior consent, Defendants provided

evidence that Yarbrough had executed personal information forms with his medical

provider, BOA, that authorized the medical provider to disclose his information "to carry

out treatment, payment activities and healthcare operations;" that the forms listed only

his cellular telephone number; that the medical provider had given this information to

Quest; and, that Quest had given this information to Credit Control as part of the

collection referral (DE # 25).

To support its position, that the provision of this telephone number on BOA's

personal information forms constituted express consent, Defendants relied upon logic

and the sole case of *Pollock v. Bay Area Credit Serv., LLC*, No. 08-61101-CIV-

DIMITROULEAS, 2009 WL 2475167 (S.D. Fla. Aug. 13, 2009).  There, the Court noted that

according to guidance provided by the Federal Communications Commission, prior

express consent is deemed to be granted where the consumer provides a wireless

number to the creditor during the transaction that resulted in the debt that is subject to

---

[2]  One day prior to filing this Motion for Summary Judgment, Defendant Quest filed a Motion to Compel Discovery, which sought to compel Plaintiff to respond to written discovery requests (DE # 24).  Plaintiff did not file a response, and the motion was granted (DE # 33).  Approximately one week after filing the Motion for Summary Judgment, Defendant Credit Control also filed a Motion to Compel Discovery, which sought to compel Plaintiff to respond to written discovery requests (DE # 29).  This motion became moot when Plaintiff's motion to voluntarily dismiss Count IV due to lack of subject matter jurisdiction was granted.

the collection efforts. *Pollock*, 2009 WL 2475167, at *9-*10.  The Court denied summary

judgment, however, where the Defendant contested the fact that she had provided the

cellular telephone number to the creditor, and her signature was not on the same page

as the telephone number; thus, there remained a material issue of fact regarding her

express consent. *Id.* at *11.

On April 6, 2010, the District Judge entered a Twenty-One Day Notice of

Consideration of Motion for Summary Judgment, providing that the opposing party's

memorandum in opposition shall be filed no later than April 28, 2010 (DE # 28).

On April 21, 2010, Plaintiff filed a Motion to Dismiss Count IV for lack of

jurisdiction, noting that the TCPA is the only federal statute that confers exclusive

jurisdiction upon state courts (DE # 34).  On May 5, 2010, the Court granted the Motion to

Dismiss, without prejudice (DE # 40).  On that same date, the Court entered a Final

Judgment in favor of Defendant Credit Control as to Count I, II, III, and V of the

Complaint; and, in favor of Defendant Quest as to Count V (DE # 39).

The presently pending Motions for Attorneys' Fees followed.

II.     THE PRESENTLY PENDING MOTIONS FOR ATTORNEYS' FEES

A.     Credit Control's Motion

Defendant Credit Control seeks attorneys' fees in the amount of $11,894.50 from

Plaintiff Yarbrough and his counsel of record, jointly and severally.  This sum is

comprised of 37.4 hours billed by attorney Dale Golden at the hourly rate of $215; 6.1

hours billed by attorney Sangeeta Spengler at the hourly rate of between $185-$190; and

17.7 hours billed by attorney Charles McHale at the hourly rate of between $185-$190.

Defendant Credit Control recognizes that although Plaintiff had retained attorney Scott

Owens as his counsel, Plaintiff himself controlled the conduct of the litigation (DE # 42

6

at n.1).  However, Defendant contends that this does not relieve Mr. Owens of his independent obligations under 28 U.S.C. § 1927, 15 U.S.C. § 1692k, and Fed. R. Civ. P. 11. (DE # 42 at n.1). [3]

Initially, Credit Control seeks attorneys' fees from Plaintiff Yarbrough and his counsel, Scott Owens, pursuant to the provisions of Title 18 U.S.C. § 1927, contending that "it was unreasonable and vexatious for Plaintiff's counsel to pursue Plaintiff's frivolous claims" (DE # 42 at 7).  In support of this argument, Defendant points out that Plaintiff and his counsel are veteran litigators of FDCPA/FCCPA claims, and contend that the claims in the case at bar "were based on the patently false assertion that the messages that were left 'require[d] Plaintiff to access a website to obtain information about the alleged debt or communicate with Defendant in order to stop the calls.'" (DE # 42 at 10).  Defendant alleges that the text of the messages contained in the Complaint demonstrate that this was false; and, therefore the Complaint should never have been filed (DE # 42 at 10).  In addition, Defendant asserts that once the Complaint was filed, Plaintiff failed to move the case forward, and obstructed and needlessly multiplied the proceedings by failing to respond to discovery and failing to respond to Defendants' Motion for Judgment on the Pleadings.  As a result, on March 15, 2010, the Court granted the Motion for Judgment on the Pleadings by default (DE # 42 at 10).

Defendant asserts that Plaintiff continued in his failure to pursue this action since, thereafter, Plaintiff failed to attend his own deposition, which had initially been set

---

[3]  Attorney Owens did not respond individually to the Motion for Attorneys' Fees; therefore, the undersigned considers the response filed by Yarbrough to apply to the claim against Owens as well.  Since Owens has not disputed Credit Control's contention that, as co-counsel, he is liable to the same extent as Yarbrough, the undersigned does not separately address the liability of Owens.

for March 16, 2010, but was canceled at Plaintiff's request; and, thereafter set unilaterally for April 1, 2010 (DE # 42 at 6 n.2).  On April 1, 2010, Defendant took the deposition of BOA, the health care provider who had submitted Plaintiff's samples to creditor Quest for laboratory work, and received various documents completed by Plaintiff in connection with medical services provided by BOA (DE # 26).  Neither Plaintiff nor his counsel appeared at this deposition (DE # 26).

On April 2, 2010, Defendants filed a Joint Motion for Summary Judgment on Plaintiff's TCPA claim, the only claim remaining in the case (DE # 25).  The basis for this motion was that the documents and testimony furnished at the BOA deposition conclusively established that Plaintiff had provided "prior express consent" to be called on his cell phone since he had provided that number to BOA (DE # 25).

Defendants filed two discovery motions based upon Yarbrough's failure to respond to written discovery requests.  The day before the Joint Motion for Summary Judgment was filed, Defendant Quest filed its Motion to Compel (DE # 24).  Approximately one week later, Defendant Credit Control filed its Motion to Compel (DE # 29).  Defendants contend that only after being faced with two pending discovery motions, and the Motion for Summary Judgment, did Plaintiff file a Motion to Dismiss the TCPA claim for lack of jurisdiction.  Therefore, Credit Control contends that Plaintiff had needlessly multiplied this litigation, had recklessly and knowingly abused the judicial process, and should be sanctioned based upon 28 U.S.C. § 1927.

Credit Control also invokes the inherent power of the Court to levy sanctions in response to abusive litigation practices (DE # 42 at 9).  In this regard, Credit Control points out that both Plaintiff and his attorney are veteran litigators with respect to the type of claims presented in the case at bar, and relies upon the same facts as stated

8

above.

      As further support for its position, Credit Control points out that Plaintiff Yarbrough has twice been sanctioned by other judges of this Court pursuant to 28 U.S.C. § 1927, citing *Pescatrice v. Nat'l Action Fin. Servs., Inc.*, No. 05-61110-CIV-KAM (S.D. Fla. May 8, 2007) (opinion attached as Ex. 1 to Motion: DE # 42-1) (awarding fees for 1.7 hours spent by defense counsel due to unreasonable filings by Yarbrough, which vexatiously multiplied the proceedings; and an additional 8.6 hours for preparing the fee application); and, *Conner v. BCC Fin. Mgmt. Servs., Inc.*, 597 F. Supp. 2d 1299 (S.D. Fla. 2008) (awarding fees in case alleging a violation of the FDCPA/FCCPA due to failure of debt collector to register, where plaintiff's counsel continued to litigate case after it was clear that Defendant was properly registered).

      Finally, Credit Control relies upon the provisions of the FDCPA, 15 U.S.C. § 1692k(a)(3), and the FCCPA, Fla. Stat. § 559.77(2) to support an award of attorneys' fees. Credit Control asserts that the above facts establish that the FDCPA claim was brought in bad faith and for the purposes of harassment, as required to justify an award of fees against a Plaintiff under the fee shifting provision of the FDCPA; and, that the fee shifting provision of the FCCPA is construed similarly to the FDCPA (DE # 42 at 13-14). Credit Control concludes that "this lawsuit was nothing more than Plaintiff's attempt to recover money by harassing Credit Control" (DE # 42 at 14); and, therefore the Court should award Credit Control its attorneys' fees with respect to these claims.[4]

---

    [4]  Credit Control did not provide a breakdown of the fees which are attributable to the FDCPA/FCCPA claims.  A review of the billing records reflects that, including the time billed for reviewing the Court's Order granting the Motion for Judgment on the Pleadings on these claims, a total of $5,194.50 in fees were incurred.  This consists of 18.7 hours billed by Mr. Golden; 5.7 hours billed by Mr. McHale; and .6 hour billed by Ms. Spengler.

The total amount of fees requested by Credit Control is $11,894.50 (DE # 42 at 15). To support this claim, Credit Control filed the Declaration of Dale T. Golden, its lead counsel in this matter, and attached the billing records which document the hours spent and the hourly rates of the attorneys who worked on this case (DE # 43).

In response to this Motion, Yarbrough asserts that he did not engage in vexatious conduct and did not unreasonably prolong the case (DE # 53).  He contends that the case was one of first impression and was not brought in bad faith or for the purpose of harassment.  To support his contention that he asserted a valid claim under the FDCPA that Credit Control required him to have access to a website in order to communicate with them regarding this debt, Plaintiff pointed to the fact that the initial messages specifically provided a telephone number to call "if the intended party cannot be reached at this number," and provided a website to access for personal account information. Thus, Plaintiff claims that contrary to the assertions by Credit Control, the messages did not initially provide a telephone number for persons to call with a dispute over the legitimacy of the claim.  Citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-75 (11th Cir. 1985), Plaintiff states that under the law of the Eleventh Circuit, the relevant standard to determine a violation of the FDCPA is whether the communication by the debt collector would mislead the "least sophisticated consumer," and that the message left by Credit Control would mislead the least sophisticated consumer into believing that internet access was required to obtain information about the debt.

With respect to the claim asserted under the FCCPA, Yarbrough relies on his response to Quest's Motion for Attorney's Fees (DE # 53 at 4).

Yarbrough asserts that he did not respond to the Motion for Judgment on the Pleadings due to his medical condition.  Specifically, he states that he incurred a

10

debilitating back injury in late December 2009, for which he required treatment by an orthopedic surgeon, chiropractor and physical therapist; and, that thereafter he required medical treatment for depression.  Yarbrough asserts that his illness accounts for his failure to vigorously prosecute this action (DE # 53 at 5).  To support his claim of medical impairment, Yarbrough points to the fact that in August and September of 2009 he filed, respectively 21 and 37 new cases, and he litigated a trial in October 2009; in 2010 he filed only one new case in January; 4 cases in February; and, no cases in March.

With respect to the TCPA claim, Yarbrough asserts that the claim was dismissed without prejudice for lack of jurisdiction, and thus there has been no determination on the merits.  Yarbrough asserts in conclusory fashion that he has "valid defenses to Defendant's allegation that Plaintiff consented to the calls" (DE # 53 at 4).

Yarbrough did not challenge, or even address, the reasonableness of the fees claimed by Defendant Credit Control.

        B.    Quest's Motion

Defendant Quest filed its Motion for Attorneys' Fees pursuant to Fla. Stat. § 559.77 (DE # 41).  Defendant Quest has sought only a determination of entitlement and has not provided any indication of the amount of fees it seeks.

At the outset, it is important to note that Quest predicates its Motion only on Count V of the Complaint in which Quest contends that Yarbrough sought declaratory relief against Quest for violating the FCCPA (DE # 41 at 2).[5]  Specifically, Quest contends that there is no support for Yarbrough's claim that a debt collector/creditor violates the FCCPA by using an automatic telephone dialing system to call a cellular telephone

---

[5]  Quest also notes that Yarbrough sought damages for violations of the TCPA, but has not sought attorneys' fees with respect to that claim.

without prior consent (DE # 41 at 2).  Defendant Quest cites the FCCPA, specifically Florida Statutes Section 559.72(7), which prohibits debt collectors from willfully engaging in conduct reasonably expected to abuse or harass a debtor, and Section 559.77(2), which provides for attorney's fees for defendants when a plaintiff fails to raise a justiciable issue of law or fact (DE # 41 at 3).  Quest notes that under Section 559.77(5), this section providing for attorney's fees is to be construed in line with federal courts' interpretations of the FDCPA.  Quest then turns to FDCPA cases in which courts have sanctioned parties for attorney's fees when their actions were deemed to be in bad faith (DE # 41 at 4-5).  Finally, Quest applies these standards to Yarbrough's conduct in this case, as more fully described *supra*, and concludes that his conduct must be deemed to be in bad faith as his claim had no basis in law (DE # 41 at 4-6).

Yarbrough responds by asserting that Quest failed to follow several procedural rules in filing its Motion for Attorneys' Fees.  Substantively, Yarbrough asserts that he did not intend to allege violations of the FCCPA against Quest or, alternatively, that his claim has some merit (DE # 52 at 1).  In support of a merit worthy claim, he emphasizes that, while his claim was one of first impression, a review of FDCPA, FCCPA and TCPA case law bolsters his argument that the prerecorded messages left on Mr. Yarbrough's voice mail without his consent could be found to qualify as a violation of the FCCPA (DE # 52 at 4-7).  Specifically, Mr. Yarbrough cites authority for how the same conduct that violates the TCPA can form a basis for a violation under the FCCPA (DE # 52 at 5).  He continues by citing other authorities that describe the interplay among these three statutory frameworks (DE # 52 at 5-7).

In reply, Quest offers an explanation for why it failed to comply with certain procedural rules, and dismisses Yarbrough's efforts to argue that he mistakenly brought

12

suit against Quest for FCCPA violations (DE # 54 at 1-3).  Quest otherwise reiterates that

Yarbrough has provided no support for the underlying claim he brought against Quest.

### III.    FRAMEWORK FOR ANALYSIS

#### A.    The Determination of Entitlement to Fees

Title 18 of the United States Code, Section 1927 provides, in pertinent part, that

"[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and

vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred of such conduct."  To justify

sanctions, under the plain meaning of the statute, a court must find that three conditions

apply:

> First, the attorney must engage in "unreasonable and vexatious" conduct.
> Second, that "unreasonable and vexatious" conduct must be conduct that
> "multiplies the proceedings." Finally, the dollar amount of the sanction
> must bear a financial nexus to the excess proceedings, *i.e.*, the sanction
> may not exceed the "costs, expenses, and attorneys' fees reasonably
> incurred because of such conduct."

*Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007) (quoting

*Peterson v. BMI Refractors*, 124 F.3d 1386, 1396 (11th Cir. 1997)).

Unreasonable and vexatious conduct occurs "only when the attorney's conduct

is so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's

Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (internal quotation marks and citation omitted).

"[B]ad faith turns not on the attorney's subjective intent, but on the attorney's objective

conduct." *Id.*  Negligent conduct alone, however, does not constitute bad faith under

Section 1927. *Id.* at 1241, 1242.  "[Section 1927] is not a 'catch-all' provision for

sanctioning objectionable conduct of counsel . . . For sanctions under section 1927 to be

appropriate, something more than a lack of merit is required." *Id.* at 1242 (internal

quotation marks and citations omitted).

In addition, while the rules permitting the imposition of sanctions may only reach certain individuals or conduct, "the inherent power extends to a full range of litigation abuses" and "exist[s] to fill in the interstices." *Peer v. Lewis,* 606 F. 3d 1306, 1314 (11th Cir. 2010). Thus, the inherent power of a court "'can be invoked even if procedural rules exist which sanction the same conduct,' for these rules are not substitutes for the inherent power." *Id. citing Glatter v. Mroz* (In re Mroz), 65 F.3d 1567, 1575 (11th Cir.1995) (citation omitted). *See also Spolter v. Suntrust Bank*, Nos. 10-10441, 10-10445, 10-10446 and 10-10449, 2010 WL 4608772, slip op. at 2 (11th Cir. Nov. 16, 2010). Moreover, if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power to sanction bad faith conduct in the course of litigation. *Id.* (citations omitted).  However, with respect to requests for sanctions against attorneys, the Eleventh Circuit Court of Appeals has observed that "a district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under inherent powers."  *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). Therefore, if sanctions are permissible under section 1927, then sanctions are proper, and there is no need to examine whether sanctions are also permissible under the Court's inherent authority. *Id.* Alternatively, "sanctions that are impermissible under § 1927 are also impermissible under a district court's inherent powers." *Id.* at 1252.

Finally, fee-shifting provisions under the FDCPA and FCCPA provide for attorney's fees. Pursuant to Title 15, United States Code, Section 1692k(a)(3), "On a finding by the court that an action under this section was brought in bad faith and for the

14

purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Under Florida Statute Section 559.77(2), "If the court finds that the suit fails to raise a justiciable issue of law or fact, the plaintiff is liable for court costs and reasonable attorney's fees incurred by defendant." Subsection (5) further states the Section is meant to be construed in line with federal courts' interpretation of the FDCPA.

### B. The Determination of the Amount of Fees

Under the lodestar method applied by the courts in this Circuit, attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended. *See Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Cuban Museum of Arts & Culture, Inc. v. City of Miami*, 771 F. Supp. 1190, 1191 (S.D. Fla. 1991). Defendants bear the burden of documenting reasonable hours expended and reasonable hourly rates. *See ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). Defendants must also supply detailed evidence of the hourly rates and time expended so that this Court may properly assess the time claimed for each activity. *See id.* at 427; *Norman*, 836 F.2d at 1303.

### IV. ANALYSIS OF THE MOTIONS

#### A. Entitlement to Fees

##### 1. Credit Control

###### a. 18 U.S.C. § 1927

Defendant Credit Control emphasizes that Plaintiff and Plaintiff's counsel have extensive experience litigating FDCPA and FCCPA claims. Credit Control further contends that, given this experience, Plaintiff Yarbrough and his counsel's actions in

bringing the Complaint were unreasonable and vexatious pursuant to 18 U.S.C. § 1927 because they should have known that the allegations contained in the Complaint were "patently false," namely,  that the voicemail messages could not possibly be harassing because they did not require Plaintiff to access a website to respond to Credit Control, as claimed by Plaintiff.

A review of the Complaint, however, does not bear out Credit Control's claim. With respect to the claim asserted in Count I–that the act of leaving messages which required Plaintiff to access a website to stop the calls or communicate with Defendant constituted harassment and abuse by the Defendant, Credit Control contends that the messages themselves belie this factual assertion and demonstrate that the claim is patently absurd.  The undersigned disagrees.  The messages allegedly left by Credit Control on July 26, August 4, November 25, and December 18, all in 2008, as well as a message left on January 13, 2009, provided a contact phone number for unintended parties, but otherwise directed the intended party to access a website for further information.  As Yarbrough was the intended party, he arguably was being requested in these five voicemail messages to access a website to contest the debt or further communicate with Credit Control about it (DE # 1 at 3-4).  Moreover, since such messages continued in the face of Yarbrough's non-responsiveness, Yarbrough could have been led to believe that he was required to access the website in order to stop receiving the phone calls.  Additionally, the Court never addressed the merits of whether such actions would be considered harassment and, therefore, violate the cited statutes, because the Court awarded Defendants judgment on the pleadings by default (DE # 20). Thus, the merits of Plaintiff's accusations and legal implications thereof were not examined and do not appear "patently false" on the face of the Complaint.

16

In addition, the undersigned reaches the same result with respect to the claims asserted in Counts II and III, in which Plaintiff claims that the actions of making numerous automated calls to his cellular phone without his express consent, constituted prohibited abuse and harassment under the FDCPA and FCCPA.  Defendant Credit Control argues that the claims in Counts II and III impermissibly seek to make a violation of the TCPA, which prohibits placing automated calls to a cellular telephone without consent, a per se violation of the FDCPA and FCCPA.  However, as argued by Plaintiff, there is nothing that precludes the same conduct from violating two different statutes, and no court has expressly ruled that such conduct, as well as violating the TCPA, also constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" the debtor, at least under some circumstances.  15 U.S.C. § 1692d. The TCPA is not limited to debt collectors; and, the FDCPA and FCCPA obviously contain no exclusions with respect to practices which also violate the TCPA.  Moreover, as Plaintiff points out, another judge of this Court has held that such conduct states a claim for relief under the FDCPA, 15 U.S.C. § 1692d.  *Clarke v. Weltman, Weinberg & Reis Co., L.P.A.*, 2010 WL 2803975, No. 10-60600-CIV-COHN (S.D. Fla. Jul. 15, 2010).

Defendant Credit Control also catalogs Plaintiff and Plaintiff counsel's lack of responsiveness to discovery and pretrial motions, and their non-attendance at depositions, including Plaintiff's own (DE # 42 at 5-7).  Credit Control cites such inaction as a basis for a claim that Yarbrough unnecessarily multiplied proceedings under 18 U.S.C. § 1927.  As Credit Control notes, however, such a finding requires the Court to conclude that Yarbrough's acts were "tantamount to bad faith" (DE # 42 at 8).  The question before the Court, therefore, is not whether Yarbrough's inaction was negligent or meritless, but, instead, whether it rises to an objective finding of bad faith.  *See*

17

*Amlong & Amlong*, 500 F.3d at 1239.

The undersigned concludes that neither Plaintiff's nor Plaintiff counsel's inaction rises to such a level.  As noted above, Plaintiff's Complaint provided an arguable legal basis for seeking relief from Defendants, and the Court never addressed the Complaint's merits.  The undersigned does not choose to impugn bad faith to Plaintiff's bringing a suit whose legal basis has not been examined.  Second, Credit Control does not offer any evidence of bad faith beyond its description of Plaintiff and Plaintiff counsel's actions, or lack thereof.  While puzzling, such actions do not, on their face, provide a basis for an objective finding of bad faith on the part of Plaintiff or Plaintiff's counsel. The inaction of Yarbrough and his counsel could just as readily be the result of mere negligence or Plaintiff's alleged medical ailments, which Credit Control has not controverted.  Finally, the undersigned notes that while Yarbrough's or his counsel's actions with respect to discovery might be subject to sanctions under Rule 37 of the Federal Rules of Civil Procedure, such rules do not necessarily equate sanctionable conduct with bad faith.  While the existence of Rule 37 does not preclude the Court from taking its own action to sanction a party or its counsel for bad faith, the undersigned does not find that a sufficient basis has been evidenced for such a ruling.

As an additional basis for asserting that Plaintiff and Plaintiff's counsel unnecessarily multiplied proceedings, Credit Control cites to the fact that Plaintiff waited nine months to dismiss his claim under the TCPA for lack of jurisdiction (DE # 34). Credit Control suggests that Yarbrough knew from the outset that this count was frivolous and only capitulated, finally dismissing it, after facing multiple discovery motions and a motion for summary judgment (DE # 42 at 13).  However, the undersigned finds another interpretation of the record equally plausible and reasonable, *i.e.*, the basis

18

Yarbrough, himself, cited; namely, faced with the dismissal of his claims providing for federal jurisdiction, and knowing that defense counsel had previously moved to dismiss TCPA claims for lack of jurisdiction in other cases under these circumstances, rather than continue to litigate the summary judgment motion, Yarbrough filed his motion to dismiss his remaining claim for lack of jurisdiction.

The undersigned also notes that this motion to dismiss was filed after Yarbrough received the April 1, 2010, deposition of BOA's corporate representative, which was filed in connection with the summary judgment motion.  This deposition provided evidence supporting Defendant's contention that Yarbrough had, indeed, consented to the phone calls in question by signing forms he originally completed in seeking treatment from BOA.  When faced with this evidence and legal argument for consent, Yarborough shortly thereafter sought to dismiss his claim rather than respond to the summary judgment motion.

In its motion, Credit Control relies on cases, some of which involve Yarbrough, sanctioning parties that continued to litigate a claim even after learning of facts negating the basis for such claim.  The undersigned, however, finds the facts of the case at bar distinguishable.  Yarbrough moved to dismiss his TCPA claim 37 days after the Court awarded judgment on the pleadings to Defendants on the counts that provided federal jurisdiction, and 19 days after the transcript of the deposition of BOA's corporate representative had been filed (DE # 20, 26, 34).  In contrast to continuing to litigate the TCPA claim, within 40 days after losing his basis for federal jurisdiction and learning of the evidence provided by BOA, Yarbrough moved for the remaining count of his suit to be dismissed.  The undersigned, therefore, finds that the timing of Yarbrough's motion to dismiss the TCPA claim was not "unreasonable and vexatious" conduct that

19

prolonged and multiplied the litigation.

b.     Court's Inherent Powers

Defendant Credit Control also relies upon a federal court's inherent powers to support its request for attorney's fees as a sanction for Yarbrough's actions (DE # 42 at 9).  In support, Credit Control restates its synopsis of Yarbrough's and his counsel's actions over the course of litigation, and reasserts its claim that they acted in bad faith. As noted above, however, "sanctions that are impermissible under § 1927 are also impermissible under a district court's inherent powers."  *Amlong & Amlong*, 500 F.3d at 1252.  Therefore, based upon the preceding analysis with respect to § 1927, the undersigned finds that it is not appropriate to sanction Plaintiff and Plaintiff's counsel under the Court's inherent powers.[6]

c.     15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77(2)

Defendant Credit Control also seeks relief under the fee-shifting provisions of both the FDCPA, 15 U.S.C. § 1692k(a)(3), and the FCCPA, Fla. Stat. § 559.77(2).

The FDCPA, 15 U.S.C. § 1692k(a)(3), provides, "On a finding by the court that an action under this section was brought in bad faith for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended."

The FCCPA, Fla. Stat. § 559.77(2), states, "If the court finds that the suit fails to raise a justiciable issue of law or fact, the plaintiff is liable for court costs and reasonable attorney's fees incurred by defendant."  Section 559.77(5), the FCCPA

---

[6] Since Plaintiff Yarbrough is an attorney admitted to practice before this Court, and he personally conducted the litigation, it is appropriate to analyze his conduct as an attorney pursuant to 28 U.S.C. § 1927.  The result would be the same, however, if his conduct was viewed as that of a party pursuant to the inherent powers of the Court.

provides that, "In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act."

Although the above statutes contain different language with respect to the standard used to warrant an award of attorney's fees, Defendant Credit Control has treated these statutes together, citing the above admonition in subsection 5 of the FCCPA.  For the reasons stated below, the undersigned concludes that Yarbrough's action was not brought in bad faith for the purpose of harassment; nor did the Complaint faile to raise a justiciable issue of law or fact.  Therefore, the undersigned recommends denial of an award of attorneys' fees pursuant to this section.

Although Yarbrough did not ultimately prevail on his FDCPA claims, the record does not support a finding that his claims that the actions of requiring the debtor to access a website to communicate with the debt collector (Count I) and placing automated calls to a cellular telephone without consent (Count II) were brought in bad faith or for the purpose of harassment.  At the outset, the undersigned notes that Yarbrough explained his lack of activity in this case was due to his personal medical problems, and therefore the undersigned declines to draw an inference that this lack of activity is an indication of Yarbrough's belief that the case had no merit.  There is simply no sufficient evidence in the record to support a finding that Yarbrough acted in bad faith or for the purpose of harassment.

Moreover, although the FDCPA claims in Counts I and II, and the FCCPA claim brought in Count III (which was based on the assertion that calls were placed to Yarbrough's cellular telephone without consent) were ultimately dismissed on the merits when the District Court granted the Motion for Judgment on the Pleadings by default; as

previously stated, Yarbrough has presented colorable arguments to support his decision to bring this lawsuit and seek to extend the protections of the FDCPA and FCCPA.  Thus, the undersigned declines to find that there was no justiciable issue of law or fact.

### 2. Quest

Defendant Quest has sought relief under Florida Statutes Section 559.77 as to Count V of Yarbrough's Complaint, as to which Quest claims that Yarbrough sought declaratory relief against Quest for violations of the FCCPA (DE # 41 at 1, 2).

At the outset, the undersigned concurs with Yarbrough that it is clear from a reading of the Complaint that relief was not sought against Quest for violations of the FCCPA.  Count V sought declaratory and injunction relief against the "defendants" based upon the alleged violations of both the FCCPA and TCPA.  The basis for seeking relief against Quest was the allegation contained in paragraph 21 of the Complaint:

> 21.  Defendant, CREDIT CONTROL, placed the calls on behalf of QUEST, and consequently, QUEST, is liable to Plaintiff for CREDIT CONTROL'S violation of the TCPA and its regulations.  See paragraph 10, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* . . . .

Thus, it is clear that the basis for seeking relief against Defendant Quest was only the alleged violation of the TCPA.  It was certainly careless for Plaintiff to have referred generically to the plural "defendants" when seeking injunctive and declaratory relief for the violations of the FCCPA, but this does not rise to the level of sanctionable conduct.  Defendant Quest has not sought attorney's fees based upon the claims that it violated the TCPA, and thus sanctions are not warranted.

Moreover, as noted above, under Section 559.77, a plaintiff may be liable for attorney's fees in FCCPA actions only if plaintiff's suit fails to raise a justiciable issue of

law or fact.  Quest principally complains that Yarbrough's claim under the FCCPA is entirely without merit, and Yarbrough responds that his claim is one of first impression, citing supportive case law (DE # 41 at 3; 52 at 5-7).  As the undersigned has previously stated, the merits of Yarbrough's claims were never reached by the Court since Defendants were awarded judgment on the pleadings by default.  Moreover, although Yarbrough's Response asserts several points as to how his suit, if reviewed on the merits, could be found to state a claim for Quest's violation of the FCCPA, Quest fails to respond to any of these substantive arguments, instead choosing to focus on procedural deficiencies.

Given the unexamined merits of this case, a review of the record as a whole, and the undersigned's analysis *supra* of Florida Statutes Section 559.77(2), the undersigned concludes that the Complaint does not fail to raise a justiciable issue under Count V against Quest, and thus attorney's fees should not be awarded to Quest.

### B.   Determination of the Amount of Fees

Since the undersigned recommends that Defendant Credit Control and Defendant Quest should not be awarded attorneys' fees, the undersigned does not reach the issue of the reasonable amount of fees to which each Defendant is entitled.  In this regard, the undersigned notes, however, that Yarbrough did not challenge the amount of fees sought by Defendant Credit Control ($11,894.50); and, that Quest has requested the Court to rule on entitlement before requiring a submission regarding the amount of fees sought.

### V.   CONCLUSION

Based upon a review of the record as a whole, and the foregoing analysis, the undersigned finds and concludes that the Defendants are not entitled to attorneys' fees

incurred in defending this suit brought by Mr. Yarbrough and his counsel.  Therefore, it is hereby

        **RECOMMENDED** that Defendant Credit Control Services, Inc.'s Verified Motion for Attorneys' Fees (DE # 42) be **DENIED**.  It is further

        **RECOMMENDED** that Defendant Quest Diagnostics Inc.'s Motion for Attorneys' Fees (DE # 41) be **DENIED**.

        The parties will have fourteen calendar days from the date of service of this Order within which to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned.  Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

        **DONE AND SUBMITTED** in chambers in Miami, Florida, on February 12, 2011.

        *Andrea M. Simonton*

        **ANDREA M. SIMONTON**
        **UNITED STATES MAGISTRATE JUDGE**

        Copies furnished via CM/ECF to:
        The Honorable Federico A. Moreno,
           United States District Judge
        All counsel of record